IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| STEVEN D. RICHARDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 19-00624 ACK-RT |
| | ) |
| JOHN E. WHITLEY, Acting Secretary | ) |
| of the Army, Department of | ) |
| the Army, | ) |
| | ) |
| Defendant. | ) |
| | ) |

ORDER GRANTING THE ARMY'S MOTION TO DISMISS (ECF. NO. 29) AND
AFFIRMING THE AGENCY'S DECISION UPHELD BY THE MERIT SYSTEMS
PROTECTION BOARD

Plaintiff Steven D. Richards is a former GS-12
equipment specialist with the United States Department of the
Army, who was stationed at Schofield Barracks in Hawai`i and
removed from federal employment in 2017, based on various
charges of misconduct.  In this lawsuit, Plaintiff seeks review
of the Agency decision affirming his removal and brings claims
against Acting Secretary John E. Whitley in his official
capacity as the Secretary of the Army (the "Army") for
retaliation and race and color discrimination.[1]

Two matters are before the Court:  (1) the Army's
Renewed Motion to Dismiss or in the Alternative for Summary

_____

[1]  On January 20, 2021, the Honorable John E. Whitley replaced Ryan D.
McCarthy as the Acting Secretary of the Army.  Accordingly, pursuant to
Federal Rule of Civil Procedure 25(d), the latter is substituted as the
proper defendant and the case caption reflects the same.

1

Judgment (the "Motion"), ECF No. 29, on the discrimination (including retaliation) claims, and (2) Plaintiff's petition for review of the Merit Systems Protection Board's ("MSPB" or "Board") final order on the non-discrimination claims (the "MSPB Appeal").  For the reasons discussed below, the Army's Motion is GRANTED and the agency decision as upheld by the MSPB is AFFIRMED.

## BACKGROUND

As alluded to, this "mixed-case appeal" presents two sets of claims:  appealable non-discrimination claims brought under Section 7703 of the Civil Service Reform Act of 1978 (the "CSRA"), U.S.C. § 1101, et seq., coupled with related discrimination and retaliation claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et seq.

## I.   Factual Background

During the relevant period, Plaintiff served in a permanent competitive service position as an equipment specialist, also known as an Avionics Logistics Assistance Representative ("LAR").  1st Am. Compl. ("1AC"), ECF No. 18, ¶¶ 6, 11.  As discussed more fully below, Plaintiff was removed from federal employment in 2017 after the Army determined that he engaged in multiple instances of misconduct.  See 1AC ¶ 6;

2

see also AR 1364-1446 (the "ALJ Decision").  The following facts related to Plaintiff's removal and allegations of discrimination and retaliation are principally drawn from the 1AC, evidentiary exhibits attached to the parties' briefs and concise statements of fact ("CSF"), and the administrative record, including the ALJ Decision.

### a. The Investigation & Plaintiff's Invocation of the Fifth Amendment

In April 2016, Plaintiff returned to Hawaii from a deployment in Iraq.  ALJ Decision at 5; 1AC ¶ 14.  Two months later, in June, the Army prepared a draft notice of proposed removal ("NOPR") based on various charges of alleged misconduct.  ALJ Decision at 7-8.  The draft NOPR, while not officially issued to Plaintiff at that time, led to a professional investigation and inquiry against him for possible criminal violations.  Id.  On October 13, 2016, in connection with the investigation, Plaintiff was detained, fingerprinted, photographed, and told he was a suspect for wire fraud and False Claims Act violations.  Id.  Plaintiff invoked his Fifth Amendment right to remain silent and to counsel, and he was then released on his own recognizance.  Id.

### b. The NOPR and Removal

Three months later, on January 9, 2017, the Army issued its official NOPR to Plaintiff.  AR 15-22.  Plaintiff

3

replied in writing through his attorney.  AR 32-33.  Instead of
responding substantively to the charges outlined in the NOPR,
however, Plaintiff invoked his Fifth Amendment privilege against
self-incrimination out of concern that the prior investigation
and criminal inquiry were still ongoing.  Id.; see also ALJ
Decision at 8-9.  In the written letter, his attorney explained
that Plaintiff had not received immunity assurance or adequate
protection for any statements he might make in response to the
NOPR.  AR 15-22.

        Three days later, the Army, through agency counsel,
sent Plaintiff a letter advising that his "chain of command was
informed that the previous military police inquiry" had been
"closed" and there would be "no further criminal inquiry into
that matter."  AR 31.  The Army gave Plaintiff additional time,
until 5:00 p.m. EST on February 27, to respond to the NOPR with
his side of the story.  Id.  Plaintiff and his counsel, however,
apparently believed that the Army's letter was insufficient to
provide adequate immunity from criminal charges or to confirm
that Plaintiff would not be prosecuted.  See AR 28-29; see also
ALJ Decision at 8-9.  Plaintiff's counsel thus sent the Army a
letter, hours after the 5:00 extended deadline had passed,
stating that Plaintiff declined to respond to the NOPR because
the Fifth Amendment "protects [Plaintiff] from making any
statement or response to the proposed removal notice absent an

4

official declination of prosecution" from a "Federal prosecutorial entity" or an "issuance of an immunity," and because the Army lacks "authority to officially decline prosecution."  AR 28-29; see also ALJ Decision at 8-9.

Shortly after this exchange, and having received no substantive response from Plaintiff within the deadline, Deciding Official Raymond Morace issued the Notice of Removal determining that Plaintiff would be removed from federal service effective April 5, 2017.  ALJ Decision at 6.  The removal action proceeded on four charges:  "(1) failure to follow procedures and instructions; (2) misuse of a government credit card; (3) lack of candor; and (4) disrespect to a superior."[2/]  AR 8.

### c. Incident With Major Maia on Date of Removal

Plaintiff alleges that on April 5, 2017, the date Plaintiff was removed from employment, he was illegally detained by Major Eric Maia, which amounted to an effective arrest.  See Ex. E to Army's CSF, ECF No. 30-8 ("EEO Complaint"); see also Ex. A to Pl.'s Opp., ECF No. 52-1 (EEO Complaint and pre-

---

[2/]  The substance of the factual specifications underlying each charge is discussed more fully below in Section II.a.

complaint documents).[3/]  In a formal equal employment opportunity ("EEO") complaint—discussed more below—Plaintiff alleged that on the date of his removal he was ordered to surrender his cell phone outside a conference room, and that Major Maia "blocked the door" to prevent Plaintiff from leaving the room; spoke to Plaintiff in an "aggressive[]" tone and "a hostile and loud voice"; did not allow Plaintiff to leave the conference room; and did not allow Plaintiff to consult an attorney.  See EEO Complaint at 1-2.

### d. The Administrative Proceedings

#### i. The MSPB Appeal

On May 4, 2017, Plaintiff filed a mixed-case appeal with the MSPB challenging his removal.  AR 10; see also 1AC ¶ 18; Ex. A to Army's CSF, ECF No. 13-2.  In it, he raised several

---

[3/] Exhibit A to Plaintiff's Opposition comprises 170 pages of what appear to be documents related to the EEO investigation.  Plaintiff's Opposition rarely cites any specific exhibits, and when it does it rarely points the Court to the relevant document or page numbers within the exhibit. Cf. Local Rule 56.1(f) (explaining in the context of summary judgment motions that "the court shall have no independent duty to search and consider any part of the court record not otherwise referenced [by] the parties" or to "review exhibits in their entirety, but rather will review only those portions of the exhibits specifically identified [by the parties]").  Indeed, the same problem applies in Plaintiff's briefing on the MSPB Appeal: Plaintiff makes numerous factual assertions but fails to point the Court to the relevant portion of the record to support them.  This increases the burden on this Court exponentially.  The Court reminds counsel that "judges are not 'like pigs, hunting for truffles [in the record].'"  Valvanis v. Milgrom, Civ. No. 06-00144 JMS-KSC, 2008 WL 2164652, at *6 n.13 (D. Haw. May 22, 2008) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)); see also Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (quoting that same "familiar maxim" and—applying a different analogy—declining to "sort through the noodles" in search of a claim where the plaintiff "heaved the entire contents of a pot [of spaghetti] against the wall in hopes that something would stick").

affirmative defenses, including due process or harmful procedural error (relating to his purportedly being denied the right to reply to the NOPR) and retaliation for protected EEO activity (alleging that his removal and the investigation leading up to it was retaliatory based on prior EEO complaints).[4/]  AR 10; Ex. A to Army's CSF.

In a written decision issued on September 13, 2019, the Administrative Law Judge ("ALJ") for the MSPB upheld Plaintiff's removal, finding that the Army proved the specified misconduct charges and considered the relevant factors to impose a penalty "within the tolerable limits of reasonableness."  ALJ Decision at 1-2, 75; see also 1AC ¶¶ 19-20.  The ALJ also determined that the Army did not retaliate against Plaintiff for engaging in protected EEO activity.  ALJ Decision at 58-59.  The ALJ's Decision in the MSPB appeal became final on October 18, 2019.  1AC ¶ 20.

### ii. The EEO Complaint

Meanwhile, almost two weeks after filing his MSPB appeal, Plaintiff contacted an EEO counselor complaining that he

---

[4/]  The MSPB Administrative Law Judge issued an order soon after Plaintiff had filed his Appeal describing Plaintiff's affirmative defenses to include "Title VII discrimination (reprisal for protected equal employment opportunity (EEO) activity), reprisal for exercise of his 5th amendment right against self-incrimination under the U.S. Constitution, due process violations, and harmful procedural error."  Ex. B to Army's CSF, ECF No. 30-5, at 1.  Plaintiff was also cautioned that his failure to notify the Board if he intended to raise any other affirmative defenses "may render the defense waived."  Id. at 1 n.1; see also AR 217-30.

was discriminated against when he was illegally detained by
Major Maia on the date of his removal.  See EEO Complaint; see
also Ex. A to Pl.'s Opp.  Plaintiff eventually filed a formal
EEO Complaint describing the incident with Major Maia on April
5, 2017.  See EEO Complaint at 1-2.  Although the EEO
Complaint's narrative of the events in question did not describe
the basis for alleging discriminatory intent, Plaintiff checked
boxes in the form indicating that he believed he was
discriminated against based on his race (African American) and
color (Black).  See id.  He later amended his Complaint to also
allege reprisal (i.e., retaliation).  See Ex. B to Pl.'s Opp.,
ECF No. 52-2.

          The Equal Employment Opportunity Commission ("EEOC")
ultimately dismissed Plaintiff's EEO Complaint on November 30,
2019.

## II.  Procedural History

          Plaintiff filed this lawsuit on November 15, 2019.
ECF No. 1.  The Army then moved to dismiss or, in the
alternative, for summary judgment on the Title VII
discrimination and retaliation claims.  ECF No. 12.  The Court
advised the parties that it would wait to consider the Army's
motion until it could be heard together with the MSPB Appeal on

the non-discrimination claims.[5/]   ECF No. 16.   The Court then administratively withdrew the Army's motion to await the filing of the administrative record in the MSPB Appeal.   Id.

Soon thereafter, Plaintiff filed the 1AC.   The electronic administrative record was then filed on May 8, 2020, ECF Nos. 24-28, and the Army filed its renewed Motion to Dismiss or in the Alternative for Summary Judgment and CSF four days later.   ECF Nos. 29 (Motion) & 30 (CSF).   The Court initially set the Motion and the MSPB Appeal for hearing on September 30, 2020.   ECF No. 31.   But when the COVID-19 pandemic resulted in a delay in obtaining the complete administrative record, the Court rescheduled and held the telephonic hearing on January 12, 2021. See ECF Nos. 35, 38, & 44; see also ECF No. 57.   Plaintiff filed his Opposition to the Motion and CSF in opposition on December 22, ECF Nos. 52 & 53, and the Army filed its Reply on December 28, ECF No. 54.   As to the MSPB Appeal, Plaintiff filed his Opening Brief on November 25, ECF No. 49; the Army filed its

---

[5/]   Specifically, the Court noted that courts deciding mixed-case appeals should generally address both discrimination and non-discrimination claims together in one proceeding.   ECF No. 16; see also Kamahele v. Napolitano, Civ. No. 08-00283 DAE-LEK, 2009 WL 3818230, at *4 n.5 (D. Haw. Nov. 13, 2009) (noting that in mixed cases claims should generally be ruled on at the same time because "questions of the employee's inefficiency or misconduct, and discrimination by the employer, will be two sides of the same question and must be decided together" (quoting Williams v. Dep't of the Army, 715 F.2d 185, 1490 (Fed. Cir. 1983) (en banc))); Toyama v. Leavitt, Civ. No. 08-00198-ACK-KSC, 2009 WL 144323, at *4 (D. Haw. Jan. 21, 2009) ("[B]ifurcation of the discrimination claims and non-discrimination claims in a mixed case is improper.").

Answering Brief on December 22, ECF No. 51; and Plaintiff filed his Reply on December 29, ECF No. 56.[6]

## STANDARDS

This is a mixed case involving claims by a federal employee that he has been affected by (1) an adverse employment action and (2) related discrimination and retaliation.[7] Federal courts apply different standards of review to each of these sets of claims.

Under the CSRA, a federal employee has a right to appeal certain adverse employment actions by the agency—including removal—to the MSPB. See Kloeckner v. Solis, 568 U.S. 41, 43-44, 133 S. Ct. 596, 184 L. Ed. 2d 433 (2012) (citing 5 U.S.C. §§ 7512, 7701). The MSPB is "an independent adjudicator of federal employment disputes." Id. at 44, 133 S. Ct. 596, 184 L. Ed. 2d 433. An employee's appeal "may merely allege that the agency had insufficient cause for taking the action under the CSRA; but the appeal may also or instead charge the agency with discrimination prohibited by another federal statute," such as

---

[6]  The parties stipulated to—and the Court allowed—an enlargement of length of the briefs addressing the MSPB Appeal.  See ECF No. 50.

[7]  The Court notes that, as discussed in more detail below, Plaintiff for the first time at the hearing before this Court argued that his race and color discrimination claims were actually not part of his mixed case, because they involved a separate incident not related to the removal (specifically, the incident with Major Maia on the date of the removal).  In any event, Plaintiff does consider at least his retaliation claim as part of his mixed case—and his including retaliation as an affirmative defense before the MSPB made it a mixed case—so the Court proceeds accordingly.

Title VII.  Id. (citing 5 U.S.C. § 7702(a)(1) (listing federal antidiscrimination statutes)).  "When an employee complains of a personnel action serious enough to appeal to the MSPB and alleges that the action was based on discrimination," he has brought a so-called "mixed case."  Id. (citing 29 C.F.R. § 1614.302).

Petitions to review a final decision of the MSPB are ordinarily filed in the United States Court of Appeals for the Federal Circuit.  5 U.S.C. § 7703(b)(1)(A).  When, however, a federal employee "claims that an agency action appealable to the MSPB violates an antidiscrimination statute listed in § 7702(a)(1)," the employee "should seek judicial review in district court, not in the Federal Circuit."  Kloeckner, 568 U.S. at 56, 133 S. Ct. 596, 184 L. Ed. 2d 433.

I.   **Statutory Discrimination and Retaliation Claims**

The standard of review for statutory discrimination claims (including retaliation) is de novo.  See 5 U.S.C. § 7703(c); see also id. § 7703(b)(2) (cross-referencing § 7702, which lists the federal discrimination statutes).  Thus, the usual standards under the relevant Federal Rule of Civil Procedure ("Rule") apply:

### a. Rule 12(b)(1): Motion to Dismiss for Lack of Subject Matter Jurisdiction

A defendant may challenge a court's subject matter jurisdiction under Rule 12(b)(1). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." See Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

A challenge to a court's subject matter jurisdiction may be either "facial" or "factual." Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)). The moving party may bring a factual challenge to the court's subject matter jurisdiction by submitting "affidavits or any other evidence properly before the court." Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009) (quoting St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989)). The nonmoving party must then "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject-matter

12

jurisdiction." Id. (quoting St. Clair, 880 F.2d at 201). In these circumstances, the court may look beyond the complaint without having to convert the motion into one for summary judgment. U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1200 n.2 (9th Cir. 2009), overruled on other grounds by U.S. ex rel. Hartpence v. Kinetic Concepts, Inc., 792 F.3d 1121, 1128 n.6 (9th Cir. 2015). When deciding a factual challenge to the court's subject matter jurisdiction, the court "need not presume the truthfulness of the plaintiffs' allegations." Id. (quoting White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000)).

### b. Rule 12(b)(6): Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) authorizes the court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

In resolving a Rule 12(b)(6) motion, the court must accept all well-pleaded factual allegations as true and construe

them in the light most favorable to the plaintiff.  Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Mere conclusory statements in a complaint or "formulaic recitation[s] of the elements of a cause of action" are not sufficient.  Twombly, 550 U.S. at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929.  Thus, the court discounts conclusory statements, which are not entitled to a presumption of truth, before determining whether a claim is plausible.  Iqbal, 556 U.S. at 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868.

        "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment."  Harris v. Cty. of Orange, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003)).

## II.  Appeal of MSPB Decision

        In contrast to the de novo review that applies to the statutory discrimination claims, a court's review of an MSPB decision regarding an adverse employment action is deferential to the agency:  The court must affirm the decision unless it is

14

"arbitrary, capricious, an abuse of discretion, not in accordance with law, obtained without proper procedures, or unsupported by substantial evidence." Delgado v. Merit Sys. Prot. Bd., 880 F.3d 913, 916 (7th Cir. 2018) (citing 5 U.S.C. § 7703(c)). "Substantial evidence is more than a mere scintilla . . . but less than the weight of the evidence." Jenkins v. Merit Sys. Prot. Bd., 911 F.3d 1370, 1373 (Fed. Cir. 2019) (quoting Jones v. Dep't of Health & Human Servs., 834 F.3d 1361, 1366 (Fed. Cir. 2016)). In addition, the MSPB's credibility determinations are "virtually unreviewable" on appeal. Jones, 834 F.3d at 1368 (quoting Hambsch v. Dep't of Treasury, 796 F.2d 430, 436 (Fed. Cir. 1986)). They are "nearly unreviewable, unless inherently improbable or discredited by undisputed fact." Figueroa v. Nielsen, 423 F. Supp. 3d 21, 31 (S.D.N.Y. 2019) (citing White v. U.S. Postal Serv., 382 F. App'x 928, 933 (Fed. Cir. 2010)); see also Rogers v. Dep't of Defense Dependents Schs., Germany Region, 814 F.2d 1549, 1553-54 (Fed. Cir. 1987).

The petitioner "bears the burden of establishing error in the [MSPB's] decision." Jones, 834 F.3d at 1366 (quoting Harris v. Dep't of Veterans Affairs, 142 F.3d 1463, 1467 (Fed. Cir. 1998)) (alteration in Jones). And finally, "[t]he choice of penalty for employee misconduct is left to the agency's sound discretion," so the court "will not disturb the agency's choice unless the severity of its action appears totally unwarranted in

15

light of the relevant actors." DeWitt v. Dep't of Navy, 747 F.2d 1442, 1444-45 (Fed. Cir. 1984) (citing Miguel v. Dep't of the Army, 727 F.2d 1081, 1083 (Fed. Cir. 1984); Brewer v. U.S. Postal Serv., 647 F.2d 1093, 1098 (Fed. Cl. 1981)).

## DISCUSSION

As discussed above, Plaintiff's discrimination claims under Title VII assert that the Army engaged in unlawful employment discrimination and retaliation; while his non-discrimination claims under the CSRA challenge the MSPB's final order affirming the Army's decision to terminate Plaintiff's employment. While the analysis of the claims may at times overlap, the Court addresses them separately. The Court begins with its de novo review of the discrimination and retaliation claims under Title VII and then moves on to its more deferential review of the MSPB's decision.

## I.   The Motion to Dismiss or in the Alternative for Summary Judgment

The 1AC asserts a discrimination claim under Title VII alleging that the Army discriminated against Plaintiff based on his race and color, and that it retaliated against him based on prior protected EEO activity. 1AC ¶¶ 27-28. The Army brings its Motion under Rules 12(b)(1) and 12(b)(6) to argue that the Court should dismiss with prejudice the discrimination portion

16

for lack of subject matter jurisdiction, and dismiss without prejudice the retaliation portion because the 1AC fails to state a claim for relief under Title VII's framework.  Mot. at 1-2. The Court takes each of these arguments in turn.

### a. Whether the Court has Subject Matter Jurisdiction Over the Race and Color Discrimination Claim

#### i. Factual Versus Facial Challenge

As an initial matter, the Court construes the Army's jurisdictional challenge as a factual—rather than a facial—attack.  Instead of challenging jurisdiction as alleged on the face of the 1AC, the Army's Motion disputes the truth of Plaintiff's allegation that he "exhausted all his administrative appeal remedies."  <u>See</u> Mot. at 9-10; 1AC ¶ 17.  Moreover, the Army asks the Court to consider evidence to dispute the truth of the 1AC's jurisdictional allegations.  That being the case, the Court treats the Motion as one to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and need not convert the Motion into one for summary judgment.[8/]

#### ii. Framework for Exhaustion in a Mixed Case

Title VII grants an aggrieved federal employee the right to file suit in federal district court, <u>see</u> 42 U.S.C. § 2000e-16(c), but before doing so the employee must exhaust his

---

[8/] The Court notes that, at the beginning of the hearing, it advised the parties that it would not convert the Motion into one for summary judgment, and neither party objected.

administrative remedies against his federal employer.  See Brown v. Gen. Servs. Admin., 425 U.S. 820, 832, 96 S. Ct. 1961, 48 L. Ed. 2d 402 (1976).  In this circuit, exhaustion is considered a "jurisdictional prerequisite."  Sommatino v. United States, 255 F.3d 704, 707 (9th Cir. 2001).  Thus, if a federal employee fails to exhaust his administrative remedies, the district court cannot adjudicate the claim.  See id.; see also Fitzgerald v. Sec 32, U.S. Dep't of Veterans Affairs, 121 F.3d 203, 206 (5th Cir. 1997).

A federal employee has at least two options for exhausting his remedies for a Title VII claim in a mixed case: he may file a "mixed case complaint" with his agency's EEO office or, alternatively, he may file a "mixed case appeal" with the MSPB.  See Sloan v. West, 140 F.3d 1255, 1259 (9th Cir. 1998) (quoting 29 C.F.R. § 1614.302(a)); see also Perry v. Merit Sys. Prot. Bd., 137 S. Ct. 1975, 1979-81, 198 L. Ed. 2d 527 (2017).

If an aggrieved federal employee chooses the first option, he would file a mixed case complaint with his agency's EEO office, "much as an employee challenging a personnel practice not appealable to the MSPB could do."  Perry, 137 S. Ct. at 1980, 198 L. Ed. 2d 527 (quoting Kloeckner, 568 U.S. at 44-45, 133 S. Ct. 596, 184 L. Ed. 2d 433); see also 29 C.F.R. § 1614.302(b).  If the EEO office decides against him, "the

18

employee may then either take the matter to the MSPB or bypass further administrative review by suing the agency in district court." Perry, 137 S. Ct. at 1980, 198 L. Ed. 2d 527 (quoting Kloeckner, 568 U.S. at 45, 133 S. Ct. 596, 184 L. Ed. 2d 433); see also 5 U.S.C. § 7702(a)(2); 29 C.F.R. §§ 1614.302(d)(1)(ii), (d)(3), 1614.310(a).

If the employee chooses the second option, he would "initiate the process by bringing [his] case directly to the MSPB, forgoing the agency's own system for evaluating discrimination charges." Perry, 137 S. Ct. at 1980-81, 198 L. Ed. 2d 527 (quoting Kloeckner, 568 U.S. at 45, 133 S. Ct. 596, 184 L. Ed. 2d 433). If the MSPB has jurisdiction over the mixed case and upholds the agency's personnel action, the employee can then request additional administrative process through the EEOC or else sue the agency in federal district court.[9] See 5 U.S.C. § 7702(a)(3), (b).

Whichever of these options a federal employee elects to pursue, he is required to raise his entire mixed case in the chosen forum. See 29 C.F.R. § 1614.302(b) (providing that the

---

[9] Of course, as discussed above, the MSPB's jurisdiction over discrimination claims is limited to those "mixed cases" where a federal employee alleges that an appealable adverse action was based in whole or in part on discrimination. See 5 U.S.C. § 7702(a)(1)(B)(i)-(iv); Chappell v. Chao, 388 F.3d 1373, 1375 (11th Cir. 2004) (citing 5 U.S.C. § 7702; 29 C.F.R. § 1614.302; Sloan, 140 F.3d at 1259). And there are other procedures for non-mixed cases, including that petitions to review MSPB decisions in non-mixed cases are reviewed by the Federal Circuit. See 5 U.S.C. § 7703(b)(1).

employee must raise his entire mixed case before either the MSPB
or the EEOC, "but not both").   If a Plaintiff has filed both an
EEO complaint and an MSPB appeal related to the same adverse
employment action, "whichever is filed first shall be considered
an election to proceed in that forum."   Id.

### iii. Whether Plaintiff Exhausted his Race and Color Discrimination Claim

The Army argues that the Court lacks jurisdiction over
the race and color discrimination claim—which is based on the
"effective arrest" incident with Major Maia—because Plaintiff
failed to raise that claim in his MSPB Appeal.[10]  Mot. at 8-11.
Plaintiff's cursory response in his Opposition is simply that an
aggrieved employee may exhaust his administrative remedies
through the EEO complaint process; that he timely filed his EEO
Complaint and this lawsuit; and that he raised both
discrimination and retaliation in his EEO Complaint.  Opp. at 9-
10.  Nowhere in Plaintiff's discussion does he even mention the
MSPB proceedings.  In its Reply, the Army responds that (1)
"Plaintiff does not dispute that he did not raise race and/or
color discrimination before the MSPB" and (2) "[t]here is also

_____

[10]  The Army includes a separate section in its Motion referencing
Plaintiff's "false imprisonment" claim.  See Mot. at 10-11.  The Court does
not read the 1AC as asserting an independent claim for false imprisonment,
and Plaintiff clarified as much at the hearing.  Instead, Plaintiff is
alleging that "the incident with [Major] Maia was motivated in part on the
basis of [Plaintiff]'s race (African American), [and] color (Black)."  1AC ¶
21; see also id. ¶ 28.  In other words, his "effective arrest" is the
discrimination Plaintiff complained of before the EEO office.  See id. 16.

no dispute that the incident which triggered the EEO Complaint, the interaction with Major Maia which occurred before Plaintiff elected the MSPB as his forum, was part of the removal process." Reply at 3.

At the telephonic hearing, Plaintiff for the first time challenged the Army's latter point, that the race and color discrimination claim (i.e., the incident with Major Maia) was part of the removal process.[11/]  Counsel argued that the incident with Major Maia is entirely separate and distinct from the Army's removal decision.  If that is true, then Plaintiff would not have had to raise the discrimination incident before the MSPB because it would not have been part of his "mixed case."[12/] See, e.g., McAdams v. Reno, 64 F.3d 1137, 1141 (8th Cir. 1995) (considering the employee's argument that "the issues in her Title VII claim are distinct from those raised in her MSPB

_____

[11/]  Plaintiff did not clarify the role of his claim for retaliation for prior protected EEO activity, which he apparently raised in both his MSPB Appeal and his EEO Complaint.  See Opp. at 9-10.  The Court focuses on the race and color discrimination aspect because that appears to be the claim raising exhaustion questions.

[12/]  In other words, Plaintiff apparently thinks that his discrimination claim is not "related to or stemming from" his removal, and that the Army's removal action was not "effected, in whole or in part" by his discrimination claim.  See 29 C.F.R. § 1614.302(a)(1) (describing a mixed case complaint before the EEO involving employment discrimination "related to or stemming from an action that can be appealed to the [MSPB]"); id. § 1614.302(a)(2) (describing a mixed case appeal before the MSPB involving an appealable agency action that was "effected, in whole or in part, because of discrimination"); cf. Miller v. Zinke for Dep't of Interior, 324 F. Supp. 3d 1032, 1035-36 (D. Alaska 2018) (discussing posture whereby plaintiff filed a separate EEO complaint "presumably because, in addition to challenging her removal, she wanted to challenge other acts of discrimination not related to the removal and therefore not within the MSPB board jurisdiction").

appeal" to decide whether the discrimination claims "should have been raised in her MSPB appeal or whether she is entitled to pursue them independently in a federal court action").

The Court begins with the undisputed fact that Plaintiff filed his MSPB Appeal on May 4, 2017, and his formal EEO Complaint almost four months later, on August 21, 2017. When Plaintiff chose to first challenge the Army's removal decision before the MSPB and to raise the affirmative defense of retaliation in that forum, he brought a "mixed case appeal" and was required to raise his entire mixed case before the MSPB. See 29 C.F.R. § 1614.302(b). Plaintiff does not dispute that he did not raise race or color discrimination before the MSPB, so the only way to establish jurisdiction over his discrimination claim via the EEO Complaint would be to show that the claim was not a part of Plaintiff's "mixed case" to begin with.

It is Plaintiff's burden to prove subject matter jurisdiction. Ashoff v. City of Ukiah, 130 F.3d 409, 410 (9th Cir. 1997). The Court finds that he has not met his burden here. For one, Plaintiff's Opposition never even mentions the parallel MSPB proceeding, let alone explains why the EEO Complaint would have been sufficient for exhaustion purposes. Any possible explanation only came up for the first time at the hearing. Yet it was clear throughout the briefing on this Motion that the Army was operating on the theory that the

22

discrimination claim was related to the removal decision and thus part of Plaintiff's mixed case.  See Mot. at 10 (noting that a plaintiff must "exhaust all related discrimination claims" through the chosen forum); id. at 11 (arguing that the Court lacks jurisdiction "over related discrimination claims brought under the EEO"); id. (describing the EEO complaint allegations as "arising out of an April 5, 2017 meeting related to [Plaintiff's] removal").  Plaintiff had the opportunity when he filed his Opposition to challenge that theory and clarify his position that these were entirely separate matters, and to provide arguments and evidence in support thereof.  He did neither until the hearing.[13]

       In any event, the Court finds that, based on the evidence and pleadings and Plaintiff's framing of his claims, Plaintiff's race and color discrimination claim is part of his

---

[13]  Again, Plaintiff had the burden to establish jurisdiction and his cursory discussion in the Opposition left the Court with much to be desired in terms of analysis.  It is true that employees may proceed with separate EEO and MSPB actions if the discrimination claim is not related to the agency's employment action (here, the removal).  See McAdams, 64 F.3d at 1144 (stating that "not . . . every federal employee's hostile work environment claim must, or can, be raised as a mixed case.  If a harassment or hostile work environment claim is not related to an appealable action, separate EEO and MSPB actions would be appropriate."); see also Katz v. Dole, 709 F.2d 251, 253 & n.1 (4th Cir. 1983) (addressing plaintiff's sexual harassment and hostile work environment claim, while Plaintiff had separately appealed her termination to the MSPB without any associated discrimination claim).  But Plaintiff did not object (until the hearing) to the Army's characterization of the incident with Major Maia as being part of or affecting the removal action.  "[A]s a general rule, our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." United States v. Sainz, 933 F.3d 1080, 1087 (9th Cir. 2019) (quoting Greenlaw v. United States, 54 U.S. 237, 244, 128 S. Ct. 2559 (2008)).

mixed case and thus should have been raised before the MSPB. Indeed, in the EEO Complaint, Plaintiff described the incident with Major Maia as taking place on the date of removal, occurring at least in part "during [his] termination process," and involving Major Maia's ordering Plaintiff to surrender his ID and government credit card (presumably in connection with Plaintiff's termination).  See Ex. A to Pl.'s Opp. at 8, 19; EEO Complaint; see also Chappell v. Chao, 388 F.3d 1373, 1379 (11th Cir. 2004) (finding that the plaintiff's "discrimination claims were related to his termination claims, and could have been brought before the MSPB as mixed claims"); B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1100 (9th Cir. 2002) (noting factors for deciding whether incidents are reasonably related for purposes of exhaustion, such as "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred").

        Accepting that the discrimination claim is related to the removal action, the Court plainly lacks jurisdiction over the claim.  It is undisputed that Plaintiff filed his EEO Complaint almost four months after he filed his MSPB Appeal.  By filing a mixed case appeal with the MSPB first, Plaintiff thereby elected to pursue all of his claims related to his removal in that forum.  See 29 C.F.R. § 1614.302(b).  Because he

24

failed to raise race or color discrimination before the MSPB, the Court lacks jurisdiction over the claim.[14]

Therefore, to the extent that it asserts race or color discrimination stemming from the incident with Major Maia described in the EEO Complaint, Plaintiff's Title VII claim is DISMISSED WITHOUT PREJUDICE.

### b. Whether the 1AC States a Claim for Retaliation Based on Protected EEO Activity

The Court turns now to the portion of Plaintiff's Title VII claim over which it has jurisdiction:  allegations of retaliation or reprisal based on prior protected EEO activity.[15]

---

[14]   Even if Plaintiff had established jurisdiction over the discrimination claim, the Court would have dismissed the claim for pleading deficiencies.  The 1AC lacks any facts to support the elements of a hostile work environment claim, including that the Army's conduct was severe or pervasive or that it was racially motivated.  See, e.g., Emens v. Pleasant Valley Sch. Dist., No. 2:17-cv-09114-SVW-RAO, 2020 WL 2494743, at *4 (C.D. Cal. Jan. 17, 2020) ("To determine whether conduct was sufficiently severe or pervasive to violate Title VII, courts look at all the circumstances, 'including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787-88, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998))); Capristo v. Brennan, No. C-15-1071 EMC, 2015 WL 4396268, at *4 (N.D. Cal. July 17, 2015) (dismissing a hostile work environment claim resting on allegations of a "yelling incident" because "[t]here was nothing in the remark that shows it was racial in nature").
[15]   The Army rightly does not challenge the Court's jurisdiction over the retaliation portion of the Title VII claim because Plaintiff properly exhausted his administrative remedies by asserting retaliation as an affirmative defense in his MSPB Appeal.
(Continued . . . )

To prevail on a retaliation claim, Plaintiff must show that "(1) he engaged or was engaging in activity protected under Title VII, (2) the employer subjected him to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action." Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987); see also Vasquez v. Cty. of L.A., 349 F.3d 634, 646 (9th Cir. 2003).

Plaintiff alleges in conclusory fashion that the Army retaliated against him for engaging in protected activity by terminating his employment. See 1AC ¶¶ 27-28. The allegations virtually end there. The 1AC provides no allegations about the specific protected EEO activity, other than one vague reference to dates and presumably an agency file number. Id. ¶ 21 (alleging "reprisal for engaging in protected EEO activity (2010, 2016)" and referencing "Agency No. ARAPG17MAY02784; EEOC No. 531-2019-00237X"). Nor does the 1AC allege that the Army actors who purportedly retaliated against Plaintiff had knowledge of Plaintiff's prior EEO complaints, let alone that

---

Moreover, the Court declines to convert the Army's Motion on the retaliation claim into one for summary judgment and instead treats it as a motion to dismiss under Rule 12(b)(6). See Bourbeau v. Jonathan Woodner Co., 600 F. Supp. 2d 1, 3 (D.D.C. 2009) ("[I]n discrimination cases summary judgment must be approached with special caution." (citation and internal quotation marks omitted)). Although the Army's Motion and Plaintiff's Opposition make some references to summary judgment standards and the burden-shifting framework, the Army's arguments are that the 1AC's factual allegations underlying the retaliation claim fail to state a claim for relief. And neither party engages in a detailed evaluation of the record. Accordingly, the Court limits its analysis to the allegations made in the 1AC to consider whether dismissal is appropriate under Rule 12(b)(6).

the removal action was motivated by them.  Even Plaintiff's Opposition says nothing to clarify the specifics of the alleged prior EEO action or the basis for any causal link (e.g., temporal proximity).[16/]  See Opp. at 10-14.  The allegations are bare bones and conclusory at best.  See Twombly, 550 U.S. at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 ("[A] formulaic recitation of the elements of a cause of action will not do.").  Apparently Plaintiff expects the Court to comb the several-hundred pages of exhibits—or possibly even the massive administrative record—to solve the mystery of the circumstances supporting his retaliation/reprisal claim.  This the Court declines to do.

        In sum, the 1AC fails to adequately plead facts to support the elements of a prima facie case for retaliation.  Because it is not clear that the claim cannot be saved by amendment, Plaintiff's Title VII retaliation claim is DISMISSED WITHOUT PREJUDICE.

---

[16/]  The Court notes that temporal proximity is at least a factor in determining whether an employee can establish unlawful retaliation.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002).  And a lapse in time between the protected activity and the adverse employment action may prevent an inference of causation between the two.  See id. ("A nearly 18-month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation."); e.g., Nicastro v. Runyon, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) ("Claims of retaliation are routinely dismissed when as few as three months elapse between the protected EEO activity and the alleged act of retaliation.").  Here, although Plaintiff alleges virtually no details about the timeline or any other basis for causation, he does indicate that the prior EEO activity occurred in 2010 and 2016, 1AC ¶ 21, while the final removal action took place in April 2017.

## II.  **The Appeal of the MSPB Decision**

The 1AC and Plaintiff's lengthy brief offer myriad arguments for why the Court should conclude that the MSPB erred in sustaining the Army's removal decision.[17/]  The Court has evaluated the arguments set forth in the parties' briefs and reviewed the administrative record, including transcripts of the ALJ hearing, the ALJ's final decision, and other relevant testimony and documents.  For the reasons discussed below, the Court holds that the ALJ's findings and the penalty imposed were reasonable, supported by the substantial evidence, not arbitrary or capricious nor an abuse of discretion, and in accord with relevant law.  The Court thus AFFIRMS the MSPB's decision sustaining the Army's removal of Plaintiff.

To prevail on an appeal of an MSPB decision, an agency must (1) prove by a preponderance of evidence that the charged conduct occurred, (2) establish a nexus between the charged conduct and the efficiency of service, and (3) demonstrate that the penalty imposed was reasonable.  Shaw v. Dep't of Veterans Affairs, No. 14-cv-5856(NSR), 2017 WL 5508914, at *3 (S.D.N.Y.

---

[17/]  As the Court alluded to in footnote 2, Plaintiff's filings make the Court's task of analyzing the record difficult.  The Opening Brief lacks numbered subsections within the "Argument" section, so it is at times hard to follow the flow of Plaintiff's arguments.  What is more, Plaintiff hardly cites the record.  Instead, he leaves it to the Court to match up his many assertions with support in the record.  Cf. Indep. Towers, 350 F.3d at 929 (admonishing the plaintiff for "leaving the court to piece together" the facts and arguments).

March 16, 2017), aff'd, 715 F. App'x 60 (2d Cir. 2018).  The Court addresses each of these elements in turn.

### a. Proof of the Charges

Plaintiff contends first that the ALJ erred in finding that the Army proved the charges described in the specifications by a preponderance of evidence.  See Opening Br. at 7-15.  An agency need only prove the essence of its charge and need not prove each factual specification supporting the charge.  Hicks v. Dep't of the Treasury, 62 M.S.P.R. 71, 74 (M.S.P.B. 1994), aff'd, 48 F.3d 1235 (Fed. Cir. 1995) (unpublished).  A specification or charge may also be sustained even if part of the specification is not sustained.  See Bowen v. Dep't of the Navy, 112 M.S.P.R. 607, 611-12 n.2 (M.S.P.B. 2009), aff'd, 402 F. App'x 521 (Fed. Cir. 2010); Diaz v. Dep't of the Army, 56 M.S.P.R. 415, 419-20 (M.S.P.B. 1993).  As discussed regarding each charge below, the Court holds that the ALJ's determination that the Army met its burden on each of the charges was made on the basis of substantial evidence.  See 5 U.S.C. § 7703(c)(3); Shaw, 2017 WL 5508914 at *2.

### i. Failure to Follow Procedures and Instructions

The Army's first charge, failure to follow procedures and instructions, was based on two specifications.[18/]  The first specification alleged that Plaintiff failed to follow instructions to notify his chain of command that he had returned to his duty station in Hawai`i following deployment:

> (4)  You were informed on or about 27 February 2015 that LAR accountability during movements is an important responsibility of the Life Cycle Management Command.  You were instructed by Mr. Rich Weaver on or about 21 March 2016 to keep your chain of command notified as you reach each point within your travel.  Upon your return to Honolulu, HI, you failed to notify your chain of command.  On 5 April 2016, Mr. Weaver emailed you concerning your whereabouts and requesting your travel status.  On 6 April 2016, Mr. Weaver emailed you concerning your whereabouts and requesting your travel status.  On 6 April 2016, Mr. Willie Mapp, AMCOM [Aviation and Missile Command] GS-13 LAR, stated that you were spotted at the office.  However, you failed to notify Mr. Weaver of your return until 8 April 2016.  According to your departure from Kuwait and arrival at CRC, Fort Bliss, TX, you should have returned to Honolulu, HI no later than Tuesday, 5 April 2016, any delays in this return date should have been communicated to your chain of command.

ALJ Decision at 9-10 (alterations in ALJ Decision); AR 16-17.

The second specification alleged that Plaintiff violated

---

[18/]  Originally this charge was based on five specifications, but the Agency withdrew specifications 1-3 on the first day of the hearing, as well as the last sentence of the fifth charge on the second day of the hearing. ALJ Decision at 10.

procedures when he left Camp Taji in Iraq without proper approval:

> (5)  On or about 23 March 2016, you left [Camp] Taji on your own accord, and traveled to BDSC to obtain a VISA stamp.  By doing so you violated procedures without proper authorization, and by undermining the LSE-Iraq Logistics Management Support (LMS) and Chief, your intention for travel by prior coordinating travel arrangement [sic] to protect you and to have proper accountability.

ALJ Decision at 10 (alterations in ALJ Decision); AR 16-17.

To support the charge of failure to follow procedures and instructions, the agency had to prove (1) that proper instructions or procedures were given or presented to Plaintiff and (2) that Plaintiff failed to follow them, "without regard to whether the failure was intentional or unintentional." Hamilton v. U.S. Postal Serv., 71 M.S.P.R. 547, 555-56 (M.S.P.B. 1996); see also ALJ Decision at 15.  Finding that the agency proved both elements based on the two relevant specifications, the ALJ sustained the charge.  ALJ Decision at 23.

As to the first specification, the ALJ considered testimony and other evidence of communications to Plaintiff instructing him to timely notify his chain of command upon return to his duty station.  Id. at 17-20.  On appeal, Plaintiff does not seem to dispute those instructions or that he received training on this issue.  See Opening Br. at 8.  Instead, Plaintiff and the Army disagree on whether Plaintiff in fact did

31

adequately notify his chain of command by notifying Mr. Willie Mapp (who Plaintiff visited upon his return) or Mr. Phelps (a "fellow employee") instead of Mr. Weaver (who the Army claims was Plaintiff's proper chain of command).  Compare id. at 8, with Ans. Br. at 16-17.

Plaintiff claims first that his phone was malfunctioning when he returned to Hawai`i, so he had a fellow employee (Mr. Phelps) check in with Mr. Weaver.  Opening Br. at 8-9.  He also claims that he notified Mr. Mapp upon his return, and that Mr. Mapp was "the equivalent of a supervisor, if not a technically chain-of-command supervisor."  Id. at 9.  Plaintiff also asserts (without providing any citations to the record) that "his own testimony and the existing email trails in the record" show that Mr. Weaver's computer was malfunctioning, so notifying Mr. Mapp "should have been sufficient."[19]  Id.  The Army, on the other hand, contends that Mr. Mapp was not a proper supervisor within the chain of command, and that Plaintiff was

---

[19]  Plaintiff also argues briefly that "any reference to [his] refusal to transmit information over an unsecured network cannot be viewed as a failure to follow instructions" because the commercial internet in Iraq was "not secure."  Opening Br. at 9.  The Court is unsure what this has to do with anything, given that the question is whether Plaintiff, upon return to the United States, had failed to comply with instructions to timely contact his chain of command.  The security of the internet in Iraq is irrelevant.

At the hearing, he suggested that this was more relevant to his claim that he had concerns about transmitting information with signature blocks (which is relevant to the charge for "disrespect to a superior").  The Court addresses that claim more fully below, but for now notes simply that the question for purposes of that charge is not whether Plaintiff had a reason to comply or not with some instruction or procedure, but whether he was disrespectful toward his superior officer.

well aware of this.[20]  Ans. Br. at 19 (citing Plaintiff's testimony that Mr. Mapp worked in a different command and had no supervisory relationship to Plaintiff).

None of these arguments from Plaintiff raise evidence—apart from Plaintiff's own testimony—that would discredit the evidence and testimony relied upon by the ALJ.  In his Decision, the ALJ thoroughly discussed his impression of the testimony and evidence, and explained why he found Plaintiff "not credible on this topic."  ALJ Decision at 18-19.  Specifically, the ALJ found that Plaintiff had ample time to contact Mr. Weaver and that Mr. Mapp—whom Plaintiff contacted instead—worked in a different command.  Id.  While the ALJ found Plaintiff's explanations to be "inherently improbable and beyond credulity," he found Plaintiff's civilian supervisor Leroy Houston's testimony "earnest, straightforward, and compelling" as to Mr. Mapp's lack of a supervisory relationship with Plaintiff.  Id. It is not the Court's role to second guess the ALJ's credibility determinations unless they are inherently improbable or discredited, and the ALJ properly recognized the conflict in testimony and analyzed the factors outlined in Hillen v. Dep't of the Army, 35 M.S.P.R. 453 (M.S.P.B. 1987) to make a

_____

[20]  Neither the Army in its Answering Brief nor the ALJ in its Decision addressed Plaintiff's claim that he apparently told his coworker Mr. Phelps to advise Mr. Weaver that Plaintiff had returned.  Still, the ALJ conducted a detailed credibility analysis and ultimately credited Major Pla's testimony over Plaintiff's.

credibility determination.[21/]   See ALJ Decision at 17-18 n.12.   A reasonable person could accept the evidence in the record and cited by the ALJ as adequate to support the conclusion that the Army proved this specification.

As to the second specification, the crux was that Plaintiff failed to get approval before he left Camp Taji in Iraq to obtain a required visa.   The ALJ found that there was no apparent dispute that (1) to leave Iraq, Plaintiff needed to leave Camp Taji to secure a visa, and (2) Plaintiff needed approval to leave Camp Taji.   Id. at 20-21.   The only question, then, was whether Plaintiff had approval to leave Camp Taji.   See id.

Considering evidence and testimony by Plaintiff and Major Javier Pla, and appropriately considering the Hellen factors, the ALJ credited Major Pla's version of events over Plaintiff's.   Id. at 21-22.   The ALJ concluded that Major Pla's hearing testimony, while not perfect, was "generally straightforward and unequivocal" and "tracked his prior statement, such that [the ALJ] believed him."   Id. (citing Hillen, 35 M.S.P.R. at 458-62; Borninkhof v. Dep't of Justice, 5

---

[21/]   These factors include "(1) The witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor."   Hillen, 35 M.S.P.R. at 458.

M.S.P.R. 77, 87 (M.S.P.B. 1981)).  In contrast, the ALJ found Plaintiff's account "inherently improbable, contrived, and given the contradiction on this and other topics, unbelievable."  Id. at 22.  The Court sees no reason to disturb the ALJ's credibility findings, and Plaintiff does not offer a compelling one.

In sum, Plaintiff has not presented the Court with any "evidence so weighty that it 'compels' the Court to disturb the AJ's finding" as to this charge.  Figueroa, 423 F. Supp. 3d at 31 (quoting Immigr. & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 n.1, 112 S. Ct. 812, 117 L. Ed. 2d 38 (1992)).  The Court finds that the ALJ sustained the charge of failure to follow procedures and instructions on the basis of substantial evidence, and the ruling was not otherwise arbitrary or capricious.

### ii.  Unauthorized Use of a Government Credit Card

The Army's second charge, unauthorized use of a government credit card, was based on two specifications:

> a.  On 9 October 2015, you booked a ticket through CTO from Honolulu, HI to El Paso, TX for 14 October 2015 for the purchase price of $ 383.10. However, upon your return to your PDS [permanent duty station], you submitted a travel voucher which included flights on both 14 October and 18 October and the total amount was $ 835.10. According to the passenger receipt you submitted, on 14 October your flight was from Honolulu, HI to Los Angeles, CA to Orlando, FL. On 18 October your flight

35

was from Orlando, FL to Dallas Fort Worth, TX to El Paso, TX. While you were approved to take leave on 15-16 October, you were not approved to use your GOVCC to pay for personal flights, nor were you approved to be reimbursed for personal flights on your travel voucher. You not only used your GOVCC to purchase these tickets but you also claimed the full ticket on your travel voucher even though a portion of the ticket was for personal use.

b. On 31 March 2016, prior to leaving theater and prior to having leave approved, you purchased a ticket with your GOVCC directly from American Airlines to fly from El Paso, TX, to Dallas Fort Worth, TX to Orlando, FL for 3 Apri1 2016. You also purchased a flight from Orlando, FL to Dallas Fort Worth, TX to Honolulu, HI for 7 April 2016, however you exchanged this ticket. Once again, you were not authorized to purchase a flight for your personal travel to Florida. You not only used your government travel card to purchase this ticket but you also claimed the full ticket price on your travel voucher even though a portion of the ticket was for personal use.

ALJ Decision at 23-24 (alterations in ALJ Decision); AR 18.

To support the charge of unauthorized use of a government credit card, the agency had to prove (1) that Plaintiff used a government credit card in a specified manner, and (2) that the use in question was not authorized. See Quarters v. Dep't of Veterans Affairs, 97 M.S.P.R. 511, 512-13 (M.S.P.B. 2004); see also ALJ Decision at 24. Intent was not an element of the charge, but the accidental nature of Plaintiff's behavior or a lack of notice may be viewed as a mitigating factor. See Quarters, 97 M.S.P.R. at 512-13. Finding that the

36

Army proved both elements based on the two relevant specifications, the ALJ sustained the charge.  ALJ Decision at 25.  In making this determination, the ALJ considered various email communications, training materials, and the testimony of Plaintiff, his supervisors, and other witnesses.  See id. at 24-25.  The ALJ found that, while certain sentences of the specifications were not proven, the Army proved the essence of the charge:  that Plaintiff misused his government credit card to pay for personal flights to Orlando, FL.  Id. at 24.

On appeal, Plaintiff does not seem to challenge the evidence underlying this charge or that the Army failed to prove it.  Instead, he argues that the charge "is not a serious offense in and of itself" and that the penalty of removal may have been too extreme.  See Opening Br. at 10.  He also claims that "the government did not at any time lose any money" and Plaintiff "paid for the entire cost of his redeployment trip with his own personal funds."  Id.  Once again, Plaintiff provides neither a citation to the record nor any case authority.

The Court finds that the ALJ's decision that the Army proved the misuse of a government credit card charge by a preponderance of evidence was supported by substantial evidence. The ALJ found—based on largely undisputed facts in the record and Plaintiff's own admissions—that government credit cards may

37

only be used for official travel, and that Plaintiff used his government credit card to purchase airline tickets that included personal trips. ALJ Decision at 24-25; see also Quarters, 97 M.S.P.R. at 512-13 (finding, regardless of his intent, "[b]ecause the appellant admits that he purchased the tires on his government credit card, the charge is sustained").

Whether or not Plaintiff is right that this charge "is not a serious offense in and of itself," does not address whether the Army met its burden to prove the charge in the first place. In any event, the MSPB has—quite unequivocally—stated that "[m]isuse of a government credit card is a serious offense." Quarters, 97 M.S.P.R. at 512-13. And the Army's removal decision was based on a combination of four different charges, not just this one. Moreover, whether or not the Government ultimately suffered a loss is irrelevant to whether the Army met its burden to sustain this charge. See id. at 512-13 (finding that the fact of no financial loss to the government may be relevant to the penalty but is irrelevant to the charge).

Plaintiff has not offered any argument for why the ALJ's conclusion as to this charge was arbitrary, capricious, or unsupported by substantial evidence.

### iii. Lack of Candor

The Army's third charge, lack of candor, was based on four specifications:

38

a. You stated that you were unable to locate your receipt for your flights. Because of this, you were required to complete a memorandum for record (MFR) to document your request for reimbursement. You submitted an MFR as required for your departure flight on 14 October 2015. In this MFR you stated [sic] "The flight route was Honolulu to California to Dallas to El Paso.", [sic] when according to the passenger receipt you submitted the flight route on 14 October 2015 was Honolulu, HI to Los Angeles, CA to Orlando, FL and the flight route on 18 October 2015 was from Orlando, FL to Dallas Fort Worth, TX to El Paso, TX. In addition, you told your supervisor MAJ Eric Maia, 25th CAB BLST [define] Chief, that CTO was unable to locate the receipt for the outbound flight from Honolulu, HI to El Paso, TX, when in fact Mr. Franks was able to obtain the receipt for the flight you originally booked with CTO on 9 October 2015.

b. On the MFR submitted 26 April 2016 regarding your travel from Kuwait back to Hawaii you stated the cost of the airline ticket was $725.73 for the flight from El Paso, TX to Honolulu, HI, however, your credit card statement and a ticket receipt from American Airlines show that you had one flight from El Paso, TX to Orlando, FL on 3 April 2016, which was used and another flight from Orlando, FL to Honolulu, HI on 7 April 2016 which showed as exchanged. You claimed the entire cost of $725.73 on your return flight from El Paso, TX to Honolulu, HI despite the fact that you had flown to Orlando, FL on personal travel. Mr. Franks later discovered that CTO reports a substantially less cost for flights from El Paso, TX to Honolulu, HI. Therefore, based on the receipts it is my determination that you did in fact fly to Orlando, FL prior to returning to Honolulu, HI and you displayed a lack of candor by not reporting that information in your MFR.

c. On your timecard for Sunday, 3 April 2016, you originally requested 8 hours of regular time and 19 hours of travel comp time earned for a total of 27 hours. While you did correct the timecard after you were questioned on this, it is still your responsibility to ensure that your timecards are accurate upon submission. In this case, not only did you claim an excess of 24 hours in a one day period, you also claimed hours for a day in which you did not perform any work. In addition, you claimed eight hours of regular time on both Monday, 4 April 2016 and Tuesday, 5 April 2016. Based on your American Airline receipt for a used airline ticket on 3 April 2016 from El Paso, TX to Orlando, FL you should not have claimed regular time for either date as you were in Orlando, FL and could not have been performing work. According to the "Department of the Army, Foreign Location Record for Deployed Civilians" you completed and signed, you did not report back to Hawaii until 6 April 2016.

d. On 8 April 2016 you signed the SF-1190, "Foreign Allowance Application, Grant and Report". [sic] On this report you stated in block #18 to stop danger pay and stop post differential effective 7 April 2016. According to Department of State Standardized Regulations (DSSR), your danger pay and post differential should stop the date you leave OCONUS. In your case, that would have been 2 April 2016. Due to this incorrect information, you may have been overpaid from the time period of 3-7 April2016. In addition, you stated that you were in Fort Bliss, TX from 3-5 April 2016, however, I have an American Airlines receipt for a used ticket on 3 April 2016 showing that you flew from El Paso, TX to Orlando, FL. You did not indicate anywhere on the "Department of the Army, Foreign Location Record for Deployed Civilians" that you traveled to Orlando, despite your requirement to do so.

ALJ Decision at 26-27 (alterations in ALJ Decision); AR 18-19.

To support this charge, the agency had to prove that (1) Plaintiff supplied incorrect or incomplete information, and (2) he did so knowingly (i.e., with an "element of deception," albeit with less than an intent to deceive). Fargnoli v. Dep't of Commerce, 123 M.S.P.R. 330, 337-38 (M.S.P.B. 2016); see also ALJ Decision at 27-28.

Finding that the Army proved both elements based on the four relevant specifications, the ALJ sustained the charge. ALJ Decision at 37.  The ALJ conducted a thorough 10-page analysis for the various specifications and their individual and collective support for the charge.  Id. at 26-37.  The ALJ considered email communications, testimony of Plaintiff and other Army employees, and other evidence.  See id.  The ALJ found that the undisputed evidence established the two elements for the lack of candor charge.  Specifically, the ALJ pointed to evidence that Plaintiff had omitted travel details in submitting information for reimbursing his travel and caused other irregularities in connection with travel vouchers.  Id. at 30 (stating that Plaintiff's "MFRs were at best misleading and clearly incomplete").

The ALJ weighed the relevant factors to resolve conflicts in testimony, and found Plaintiff's accounts to lack credibility against those accounts of Plaintiff's supervisors. Id. at 30-31.  In doing so, he found the Army's conclusion that

41

Plaintiff acted deceptively to be a reasonable one. Id. at 30-32.  Plaintiff argues that he was "jetlagged," that most of these irregularities were honest mistakes, and that he thought a superior would correct any errors.  Opening Br. at 12-14. Testimony from agency employees, however, revealed that this was unlikely given the process for submitting these reports.  ALJ Decision at 33.  The ALJ again applied the Hillen factors, leading him to conclude that Plaintiff's testimony was not credible and "inherently improbable."  ALJ Decision at 33-34.

The Court finds that the ALJ's decision that the Army proved the lack of candor charge was supported by substantial evidence.  The ALJ found—based on largely undisputed facts in the record—that these irregularities and errors existed in Plaintiff's reports and that they could not have been reasonable or honest mistakes.  Plaintiff has not raised any persuasive arguments that the ALJ's conclusion as to this charge was arbitrary, capricious, or unsupported by substantial evidence.

### iv. Disrespect to a Superior

The Army's final charge, disrespect to a superior, was based on two specifications:

> a. On 08 April 2016, you failed to obey a direct order to include your signature block on email communication.  MAJ Javier Pla briefed all Logistic personnel on his customary evening briefings, [sic] that the use of signature blocks on e-mails is important because it represents commitment to

42

the communicator by having a "Point of
Contact", [sic] information included, and it
shows professionalism by depicting which
organization one is assigned. You interrupted
MAJ Pla by stating [sic] "I will not do so",
[sic] when ask [sic] why would you not do so,
you stated [sic] "you do not see the need".
[sic] MAJ Pla reiterated the need for a
signature blocks to bring conformity to his
staff, you stated [sic] "MAJ Pla is not my
supervisor!", [sic] because he is not in your
rating chain. The Policy letter "Logistics
Assistance Division CFE-West Policy # 001
[sic] dated 10 March 2008, states in detail
how a signature blocks has to look on official
correspondence. In accordance with the
Secretary of Defense memorandum dated 10 March
2008, Commanders have Uniformed Code of
Military Justice (UCMJ) jurisdiction over DoD
[Department of Defense] Civilian Employees,
DoD Contractor Personnel, and other persons
serving with or accompanying the Armed Forces
Overseas during declared war and in
contingency operations. Therefore,
cooperating with MAJ Pla is based on military
necessity to support mission requirements and
by not complying you may jeopardize good order
and discipline or discredit the armed forces
and potential have an adverse effect on
military operations.

b. On or about 23 March 2016, during a
discussion regarding weekly activity reports,
you interrupted MAJ Pla and stated that you
would not do so. You refused to standardize
weekly activity reports [WARs] that were
requested by MAJ Pla. Your refusal and
uncooperative behavior in a potential hostile
area can be particularly harmful as it
compromises military necessity to support
mission requirements.

ALJ Decision at 37-38 (alterations in ALJ Decision); AR 19-20.

To support this charge, the agency had to prove that

(1) Plaintiff engaged in certain behavior toward a superior, and

43

(2) such behavior exhibited disrespect toward the superior.  See
Bonanova v. Dep't of Educ., 49 M.S.P.R. 294, 300-01 (M.S.P.B.
1991); see also ALJ Decision at 38-39.  As the ALJ noted, "the
[MSPB] has not defined with precision what disrespect means for
charging purposes, [but] on some level a charge of disrespect
implicates generally accepted norms for workplace behavior and
conduct, to include basic respect for superiors' authority."
ALJ Decision at 39 (citing Roberson v. Veterans Admin., 27
M.S.P.R. 489, 493-94 (M.S.P.B. 1985)).  While provocation is not
a defense, it may be considered for purposes of deciding the
penalty.  Id. (citing Kokkinis v. Dep't of Veterans Affairs, 81
M.S.P.R. 26, 28 (M.S.P.B. 1998)).

        Finding that the agency proved both elements based on
the two relevant specifications and the "totality of the
record," the ALJ sustained the charge.  ALJ Decision at 43-44.
He first concluded that "a subordinate's open defiance of a
superior's admonitions, such statements and/or others
questioning a superior's authority in front of additional
subordinates, or general obstinacy or lack of cooperation would
qualify as disrespect [for purposes of this charge]--regardless
of personal opinions."  Id. at 42.  He then acknowledged certain
factual disputes about the incidents in question.  Id. at 42-43.
He was once again confronted with "differing accounts" and thus
in the position of having to make a credibility determination

based on the Hillen factors.  See id.  As discussed above, these determinations are "nearly unreviewable, unless inherently improbable or discredited by undisputed fact." Figueroa, 423 F. Supp. 3d at 31 (citing White, 382 F. App'x at 933).  Plaintiff has not pointed the Court to any discrediting undisputed fact, nor has he shown that the credited testimony was inherently improbable.  Indeed, the ALJ applied the Hillen factors and found Major Pla's accounts to be "generally forthright and earnest," corroborated by other evidence, and ultimately "more believable"; the ALJ found Plaintiff's denials, on the other hand, "qualified" and "more as rationalizations."  ALJ Decision at 43.  "In instances such as this one, where the AJ's credibility determinations are heavily demeanor-based, they are afforded deference by the reviewing court." Shaw, 2017 WL 5508914 at *4; see also Davis v. U.S. Postal Serv., 257 F. App'x 320, 323 (Fed. Cir. 2007) ("[T]he determination of the credibility of the witnesses is within the discretion of the presiding official who heard their testimony and saw their demeanor." (citation and internal quotation marks omitted)).

Plaintiff challenges the ALJ's conclusions by arguing (1) that he did not intend to disobey the requirement that signature blocks be included on official emails and (2) that Major Pla did not personally feel disrespected by Plaintiff's behavior.  See Opening Br. at 14-15.  Neither of these

45

assertions gets at the legal elements or the factual essence of the charge.  The essence of the charge is not Plaintiff's refusal to comply with the signature requirement; it is his behavior toward his superior (in this case, Major Pla).  The ALJ properly focused on Plaintiff's behavior and found it "more likely than not" that Plaintiff engaged in behavior that "evinced disrespect toward Maj. Pla."  ALJ Decision at 43.  In the same vein, whether or not Major Pla felt disrespected is not important.  See Dominguez v. Dep't of Air Force, 803 F.2d 680, 682-83 (Fed. Cir. 1986) (minimizing the fact that supervisor physically injured by the employee's misconduct held no further "animosity" toward the employee).  What matters is that Plaintiff's behavior as charged and proven "ran afoul of generally accepted norms for workplace behavior and conduct, to include basic respect for superiors' authority."  ALJ Decision at 25; see also Roberson, 27 M.S.P.R. at 494 ("Abusive language and disrespectful behavior are not acceptable conduct and are not conducive to a stable working atmosphere.  Therefore, they constitute just cause for removal.").

        None of Plaintiff's arguments persuade the Court to override the ALJ's credibility and factual findings, which are supported by the substantial evidence.  Likewise, the Court finds that the ALJ's conclusion that the Army proved the charge

of disrespect to a superior by a preponderance of the evidence was not arbitrary, capricious, or not in accord with the law.

### b. Nexus

Although Plaintiff does not appear to challenge the nexus aspect of the ALJ Decision, the Court addresses it briefly.  To establish nexus, an agency must show by a preponderance of evidence that the employee's conduct is "related to his job-related responsibilities" such that "removal promotes the efficiency of service."  Banks v. Dep't of Veterans Affairs, 25 F. App'x 897, 899-900 (Fed. Cir. 2001); see also Dominguez, 803 F.2d at 682-83 ("An agency is required to demonstrate that removal of an employee for disciplinary reasons is for the efficiency of the service.").  To satisfy the nexus requirement, the agency must establish that the employee's misconduct would have an "adverse impact on the agency's performance of its functions."  Shaw, 2017 WL 5508914 at *5 (citing Banks, 25 F. App'x at 899-900).  Here, the ALJ observed that "[a]n agency may establish nexus by showing that the employee's conduct (1) affected his or her co-workers' job performance, (2) affected management's trust and confidence in the employee's job performance, or (3) interfered with or adversely affected the agency's mission."  ALJ Decision at 65 (citing Canada v. Dep't of Homeland Sec., 113 M.S.P.R. 509, 514-15 (M.S.P.B. 2010)).

In this case, the ALJ's conclusion that the requisite nexus was established is based on his recognition that "there is sufficient nexus between an employee's conduct and the efficiency of the service where the conduct occurred at work" and "in cases of sustained misuse of a government credit card." Id. (citations omitted).  As the ALJ pointed out, the charges "undisputedly" involve Plaintiff's conduct at work.  Id.  They also involve at least two instances of misuse of a credit card. While the Court would not necessarily call two instances "sustained," the ALJ's finding that the charges, taken together, established nexus was not, in the Court's view, arbitrary, capricious, or unsupported by the substantial evidence.

Plaintiff's conduct alleged in the charges reasonably would have "affected management's trust and confidence in the employee's job performance" and/or "interfered with or adversely affected the agency's mission."  See ALJ Decision at 65 (citation omitted).  Indeed, as to at least the first charge, an employee's "[f]ailure to follow instructions or abide by requirements affects the agency's ability to carry out its mission."  Blevins v. Dep't of Army, 26 M.S.P.R. 101, 104 (M.S.P.B. 1985), aff'd, 790 F.2d 95 (Fed. Cir. 1986); see also Figueroa, 423 F. Supp. 3d at 34 (determining that the ALJ's finding of nexus on failure to follow orders was supported by the substantial evidence, including testimony that the actions

48

"detracted from the agency's ability to carry out its mission"). There is also "a causal connection between an employee's refusal to comply with what the agency believes are properly promulgated instructions and the efficiency of the service." Blevins, 26 M.S.P.R. at 104.

As to the third and fourth charges (lack of candor and disrespect toward a superior), substantial evidence supports the conclusion that Plaintiff's conduct could have a serious adverse impact on the ability of Plaintiff's managers or supervisors to trust or remain confident in his ability to carry out his role. Indeed, evidence in the record established that Plaintiff's role required him to be geographically separated from his supervisors and to directly interact with military and civilian customers, making the position one "of special trust that requires independence." ALJ Decision at 2-3; see also id. at 71 ("[T]here was no dispute the charged misconduct eroded confidence and trust in the appellant, who as a LAR was held to a standard of independence and special trust."). Moreover, the Deciding Official made clear in the charge that Plaintiff's conduct toward a superior "in a potential hostile area can be particularly harmful as it compromises military necessity to support mission requirements." Id. at 38; see also id. ("[C]ooperating with MAJ Pla is based on military necessity to support mission requirements and by not complying you may

49

jeopardize good order and discipline or discredit the armed forces and potential have an adverse effect on military operations.").

Applying the deferential standard of review as required here and noting that Plaintiff has not made any arguments on appeal to challenge nexus, the Court finds that the ALJ's ruling establishing a nexus between the charged conduct and efficiency of service was based on substantial evidence and was not arbitrary, capricious, or contrary to law.

### c. Reasonableness of the Penalty Imposed

After sustaining the charges and finding a nexus between the charged conduct and efficiency of service, the ALJ found the penalty of removal to be appropriate.  ALJ Decision at 65.  Plaintiff argues that the ALJ erred because removal in these circumstances falls outside the tolerable bounds of reasonableness and because the Deciding Official misapplied the relevant considerations.[22/]  Opening Br. at 15, 20.

"The choice of penalty is committed to the sound discretion of the employing agency and will not be overturned unless the agency's choice of penalty is wholly unwarranted in light of all the relevant factors."  Guise v. Dep't of Justice, 330 F.3d 1376, 1382 (Fed. Cir. 2003) (citing Lachance v.

---

[22/]  Plaintiff addresses each of these arguments separately (see Opening Br. at 15 & 20), but since they involve the overlapping question of the appropriate penalty, the Court addresses them together.

50

Devall, 178 F.3d 1246, 1251 (Fed. Cir. 1999)); see also Shaw, 2017 WL 5508914 at *6 ("It has been long held that 'the court cannot and will not disturb a penalty unless it is unauthorized or exceeds the bounds of reasonableness because it is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion.'" (quoting Dominguez, 803 F.2d at 684)); Krauthamer v. Block, 587 F. Supp. 254, 257 (S.D.N.Y. 1984) (explaining that a reviewing court "will defer to the judgment of the agency as to the appropriate penalty for employee misconduct, unless its severity appears totally unwarranted" (quoting Brewer, 647 F.2d at 1098)).  The MSPB has set forth twelve factors that are relevant to assessing whether a punishment is reasonable.  Douglas v. Veterans Admin., 5

M.S.P.R. 280 (M.S.P.B. 1981).[23/]   Reviewing courts are "highly deferential" to the Agency in terms of the chosen penalty and may not rebalance the Douglas factors.   See Webster v. Dep't of Army, 911 F.2d 679, 685 (Fed. Cir. 1990).   Moreover, "[w]hether the court would have selected a different penalty had it made the initial determination is irrelevant."   Dominguez, 803 F.2d at 684.

The ALJ here concluded that the Deciding Official properly "considered the relevant factors and exercised discretion within tolerable limits of reasonableness in fixing the penalty."   ALJ Decision at 75.   Although he was not required to conduct an independent evaluation of the Douglas factors, see Figueroa, 423 F. Supp. 3d at 35, the ALJ provided a thorough

---

[23/] The factors include "(1) The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated; (2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position; (3) the employee's past disciplinary record; (4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability; (5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties; (6) consistency of the penalty with those imposed upon other employees for the same or similar offenses; (7) consistency of the penalty with any applicable agency table of penalties; (8) the notoriety of the offense or its impact upon the reputation of the agency; (9) the clarity with which the employee was on notice of any rules that where violated in committing the offense, or had been warned about the conduct in question; (10) potential for the employee's rehabilitation; (11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and (12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others." Douglas, 5 M.S.P.R. at 305-306.

analysis of the relevant factors and how each supports the Agency's conclusion that removal was appropriate.  See ALJ Decision at 65-75.  The ALJ noted that the Deciding Official completed a Douglas factors worksheet and weighed several mitigating and aggravating factors, including Plaintiff's years of civilian and military service, his lack of prior discipline, his positive performance record, and the seriousness of the misconduct.[24/]  Id. at 70-72.  The ALJ also noted the Deciding Official's testimony that he had considered Plaintiff's potential for rehabilitation and the nature of Plaintiff's position, which required independence and trust.

While the Deciding Official had not had the opportunity to consider some of Plaintiff's arguments about added job tensions and stress while deployed, the ALJ reviewed supporting evidence submitted by Plaintiff.[25/]  He ultimately recognized additional "mitigating circumstances" but—"on balance"—found them "insufficient to impugn the agency's penalty

---

[24/] The ALJ stated that "most of the misconduct at issue here was very serious." ALJ Decision at 70.  He found the "most serious" and "repeated" misconduct to be the misuse of the government credit card and lack of candor charges.  Id.

[25/] As discussed elsewhere in this Order, the Deciding Official eventually had the chance to review Plaintiff's written response and evidence, after the removal became effective and Plaintiff had initiated administrative proceedings before the MSPB.  He testified that the information would not have changed his ultimate decision.

assessment given the other aggravating factors."[26/]  Id. at 72-73.

While he did not raise it before the Agency in the underlying disciplinary proceedings, Plaintiff raised—and the ALJ considered—evidence before the MSPB that he dealt with psychological conditions and symptoms, which Plaintiff thought should be viewed as mitigating factors.  See ALJ Decision at 73; see also id. at 74 (citing Bowman v. Small Business Adm'n, 122 M.S.P.R. 217, 223 (M.S.P.B. 2015)).  Plaintiff argues in his Opening Brief that testimony of Dr. Robert Davé shows that Plaintiff was under "tremendous stress during this time period, which significantly affected his cognitive abilities."  Opening Br. at 12; see also id. at 26-31.  Dr. Davé spoke to Plaintiff's suffering from symptoms of anxiety and depression, possibly related to PTSD and other added job stresses.  See id.  The ALJ considered this testimony and other evidence of Plaintiff's psychological condition in full.  See ALJ Decision at 73-74

---

[26/]  Plaintiff argues that the Deciding Official went "outside the scope" of the evidence when analyzing one of Plaintiff's allegations that he was dealing with job tension and stress resulting from harassment by Mr. Houston. Specifically, Plaintiff argues that the Deciding Official wrongfully relied on "his personal friendship with Mr. Houston" when he testified that Mr. Houston was an "equal opportunity harasser."  Opening Br. at 35.  The ALJ addressed this argument in footnote 29 of his Decision.  He noted—and the Court agrees—that the argument "makes little sense . . . given it appears to concede [the Deciding Official] perceived Mr. Houston as a harasser."  ALJ Decision at 72-73 n.29.  In any event, as the ALJ explained, some background knowledge about another employee does not rise to the level of a due process violation "absent proof it influenced his decision," which Plaintiff has not provided.  Id. (citing Norris v. S.E.C., 675 F.3d 1349, 1354 (Fed. Cir. 2012)).

(describing the "challenges [Plaintiff's] post-deployment psychological conditions and purported symptoms posed—to include memory loss, difficulty concentrating, irritability, anxiety, depression, difficulty managing affairs, withdrawal, all pointing to an adjustment disorder"); id. (describing Dr. Davé's testimony and his assessment of the impact of Plaintiff's mental state on the charged conduct).

The ALJ properly recognized that "[e]vidence that an employee's medical condition or mental impairment played a part in the charged misconduct is ordinarily entitled to considerable weight as a mitigating factor." Id. at 74 (citing Bowman, 122 M.S.P.R. at 223-24). In considering Dr. Davé's testimony, the ALJ acknowledged that Plaintiff's medical condition or mental impairment may have impacted the conduct underlying certain charges (namely, disrespect toward a superior and failure to follow instructions), he found that they would not significantly impact others (lack of candor and misuse of a credit card). Id. at 74. Accordingly, the ALJ concluded that the mitigating potential of Plaintiff's medical conditions was reduced at least as to the lack of candor and misuse of a credit card charges. Id. He also emphasized that Plaintiff's and Dr. Davé's theory that Plaintiff's deployment led to mental or psychological conditions that contributed to his misconduct ignored the fact that the government credit card misuse began before Plaintiff's

55

deployment.[27]  Id.  And because the Deciding Official had

testified that the misuse of a credit card and lack of candor

charges justified removal on their own, the ALJ found that

Plaintiff's "medical conditions, while mitigating, where not a

significant mitigating factor under the circumstances."  Id. at

75.

Plaintiff has not pointed the Court to any reversible

error in the ALJ's analysis or to any evidence that would make

the ALJ's treatment of the additional evidence of mental

impairment or psychological conditions inconsistent with the

substantial evidence.  Instead, the ALJ cited and analyzed the

relevant testimony and Plaintiff's framing of his mitigating

theory.  The Court finds that the ALJ's finding on this point is

consistent with the substantial evidence and not arbitrary,

capricious, or contrary to law.

The ALJ otherwise mostly credited the Deciding

Official's testimony bearing on the Agency's determination of

the appropriate penalty.  ALJ Decision at 70 (finding the

agency's penalty analysis "generally appropriate and worthy of

deference").  He did, however, note some concern about the

---

[27]  Plaintiff responded to this in his Reply Brief by admitting that
"one of the charges occurred before [he] was deployed" but emphasizing that
"the rest of the charges stemmed from events occurring during deployment."
Pl. Reply at 2-3.  But, as noted throughout this section, the Deciding
Official and the ALJ both considered other aggravating factors and consulted
the Agency's table of penalties, which supported the conclusion that the
misuse of a government credit card warranted removal on its own.

56

Deciding Official's demeanor in his testimony—e.g. his "cursory" responses and questions about whether "he understood the concepts of charges and penalty." Id. Still, the ALJ acknowledged that this was the Deciding Official's first time acting in this role and ultimately "did not find [the Deciding Official's] hearing struggles particularly damning."[28/] Id. Besides the Deciding Official's testimony, the ALJ also relied on other evidence and testimony, including the decision letter, the Douglas checklist, and other material involving the penalty considerations. See id.

The Court finds that Plaintiff's arguments that the Army and the ALJ misapplied the Douglas factors are without merit. The ALJ properly "credited the evidence that the agency considered the pertinent factors bearing on the appropriate penalty." Guise, 330 F.3d at 1382. Plaintiff has offered no compelling reason to overturn the ALJ's determination, "particularly in light of [the Court's] limited scope of review on this issue." Brewer v. Dep't of Def., 249 F. App'x 174, 177 (Fed. Cir. 2007) (affirming ALJ's decision sustaining removal where deciding official completed a Douglas factors worksheet

---

[28/] Plaintiff argues in his Reply that the ALJ erred by deferring to a "[w]oefully [i]nept" deciding official. Reply at 4. The Court does not find this argument persuasive. The problems that Plaintiff takes issue with do not present any independent basis for reversal. Indeed, Plaintiff does not argue that the Deciding Official was technically unqualified. His arguments simply object to the ALJ's assessment of credibility, which is virtually unreviewable on appeal.

that indicated consideration of employee's "past disciplinary history, of which there was none," "the seriousness of [the employee's] misconduct," and "the nature of [the employee's] employment in a leadership position"); Guise, 330 F.3d at 1382 (finding "no basis for overturning the administrative judge's determination, particularly in light of the very limited scope of our reviewing authority on the penalty issue").

Even if the Court might have weighed some of the Douglas factors slightly differently or considered some charges more or less serious than others, "the penalty imposed by the AJ was consistent with the factors enunciated in Douglas, reasonable, and certainly not 'wholly unwarranted,' as it must be in order to be overturned."[29/] Shaw, 2017 WL 5508914 at *6

---

[29/] With respect to Douglas factor five—the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties—Plaintiff contends that the Deciding Official misapplied this factor because there were no substantial performance issues before the NOPR. Opp. Br. at 20-21. This is unconvincing and irrelevant given that the ALJ considered the lack of performance issues to be a mitigating factor.
(Continued . . . )

(quoting Murray v. U.S. Dep't of Justice, 821 F. Supp. 94, 110

(E.D.N.Y. 1993)).  Likewise, the penalty is not arbitrary,

capricious, or contrary to law.

---

As to factor seven—consistency of the penalty with the agency table of penalties—Plaintiff argues that each charged offense "would have been a first offense" and the Agency could have imposed a lesser penalty.  Id. at 24-25. Again, the Deciding Officially properly considered the lack of prior offenses to be a mitigating factor.  What is more, Plaintiff faced four separate charges at the same time—each with multiple specifications.  The table of penalties even says that "when an employee is being charged with multiple offenses at the same time," and "when an employee has repeatedly committed the same offense, even though the employee is being charged with the offense for the first time," "it may be appropriate to exceed the maximum suggested penalty for all of the individual offenses." AR 196.  Moreover, as the ALJ noted, Plaintiff has not offered any authority that an agency is required to "impose the least possible penalty."  ALJ Decision at 39 n.25.  Alluding to a due process violation, Plaintiff also argues that the Army failed to include a table of penalties in its evidence package relied on by the Deciding Official.  Opening Br. at 35.  The Court agrees with the ALJ's finding that the NOPR put Plaintiff on adequate notice of the relevant portions of the table of penalties.  See ALJ Decision at 68 n.25.

As to factor ten—the potential for rehabilitation—Plaintiff asserts that his inability to file a reply (discussed infra) precluded him from expressing remorse or showing the potential for rehabilitation.  Opp. at 25. Both the Deciding Official and the ALJ acknowledged that a reply would have been helpful, but the Deciding Official discerned a lack of rehabilitation from the nature of the offenses (which were repeated), and the ALJ found that conclusion to be reasonable.  ALJ Decision at 71.  And, again, the Deciding Official subsequently reviewed the Plaintiff's response and testified that it would not have changed his decision.

Plaintiff also challenges the Deciding Official's finding on factor eleven—mitigating circumstances surrounding the offense.  As noted above, the Deciding Official and the ALJ recognized several mitigating factors.  See id. at 72.  Although the Deciding Official did not consider Plaintiff's psychological condition, medical symptoms, and other possible job stress (because Plaintiff did not file a written reply to the Agency), the ALJ considered all of those factors in depth in Plaintiff's Appeal.  Id. at 72-75.

Last, Plaintiff for the first time in his Reply challenges the ALJ's application of factor twelve—the adequacy and effectiveness of alternative sanctions to deter such conduct in the future.  Again, Plaintiff cites no authority that this factor or any rule requires the Agency to apply the narrowest or least restrictive penalty.

### d. Other Affirmative Defenses

#### i. Due Process Violation/Harmful Procedural Error

Plaintiff argues that he was denied an opportunity to meaningfully respond to the NOPR, which he says violated his due process rights and constitutes harmful procedural error enough to warrant reversal.  Opening Br. at 18-20.  Plaintiff made this argument before the ALJ, who sustained the Agency's actions. The Court agrees with the ALJ that Plaintiff failed to make the requisite showing of a due process violation or harmful procedural error.

"The harmful-error rule of 5 U.S.C. § 7701(c)(2)(A) provides that an agency's decision that is appealable to the [MSPB] may not be sustained if the employee shows harmful error in the application of the agency's procedures in arriving at such decision." Cornelius v. Nutt, 472 U.S. 648, 657, 105 S. Ct. 2882, 86 L. Ed. 2d 515 (1985) (internal quotation marks omitted).  "By regulation, the MSPB places the burden on the petitioner to show that the error was harmful, i.e., 'caused substantial harm or prejudice to his/her rights.'" Miguel, 727 F.2d at 1084-85 (citing 5 C.F.R. § 1201.56(c)(3)).  Thus, the employee must show both that the agency committed procedural error and that the agency "is likely to have reached a different conclusion in the absence of the procedural error." Ward v.

U.S. Postal Serv., 634 F.3d 1274, 1282 (Fed. Cir. 2011) (citing 5 C.F.R. § 1201.56(c)(3)).

The Fifth Amendment's Due Process Clause requires that the government provide sufficient procedural protections whenever it deprives an individual of property.  See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 576, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).  Based on that concept, a tenured federal employee is entitled to "notice 'both of the charges and of the employer's evidence' and an 'opportunity to respond' before being removed from employment."  Ward, 634 F.3d at 1279 (quoting Stone v. FDIC, 179 F.3d 1368, 1374–76 (Fed. Cir. 1999)).

The crux of Plaintiff's due process and harmful procedural affirmative defense is that he had no meaningful opportunity to respond to tell his side of the story in advance of his removal.  Opening Br. at 18-19.  Plaintiff did not respond to the NOPR and instead, on the advice of counsel, invoked his Fifth Amendment privilege against self-incrimination.  He refused to provide a substantive response to the charges in the NOPR until such time that he received an immunity guarantee or adequate assurance that the government would not pursue criminal charges against him.  See Reply at 4-5.  Only after he had been removed did Plaintiff receive what he

61

perceived as adequate assurance.  See id.; see also ALJ Decision at 46-47.

The Army responds that it provided Plaintiff with a letter on February 16, 2017, assuring him that the criminal inquiry would not proceed and granting him additional time to respond to the NOPR, but that Plaintiff decided not to do so. Ans. Br. at 29.

Considering these arguments in the MSPB Appeal, the ALJ concluded that the Army provided Plaintiff with all the process that was due under the law. ALJ Decision at 45-46.  He found that Plaintiff had a meaningful opportunity to reply upon receiving the February 16 letter, which according to the ALJ "quite clearly" informed Plaintiff that the criminal inquiry had been closed and would not be pursued further.  Id. at 45.  The ALJ considered Plaintiff's decision to continue to remain silent based on "very conservative" legal advice just that: a decision. Id. at 46-47 ("That is to say, his 5th amendment privilege concerns did not implicate denial of his right to answer the NOPR—he made that decision on his own.") (citing Modrowski v. Dep't of Veterans Affairs, 252 F.3d 1344, 1350-53 (Fed. Cir. 2011); Gunville v. Dep't of the Interior, MSPB Dkt. No. DE-0752-13-0220-I-1, slip op. at ¶¶ 4-5, 1-15 (M.S.P.B. Dec. 5, 2014); Colon v. Dep't of Navy, 8 M.S.P.R. 190, 201-02 (M.S.P.B. 1993)).

Even assuming these circumstances did establish a procedural error, the ALJ observed that Plaintiff had failed to show that the Deciding Official's conclusion would have been different absent the error.  Id. at 49.  While it was undisputed that the Deciding Official would have liked to have reviewed a written response, the ALJ reviewed the materials submitted by Plaintiff (albeit after his removal), as did the Deciding Official, who testified that they would not have caused him to make a different conclusion.  Id. at 48.

Along with the parties' arguments, the Court has reviewed the relevant case law, the ALJ's analysis, the testimony of the Deciding Official, the correspondence provided to Plaintiff about the investigation, and Plaintiff's delayed written submission.  Based thereon, the Court concludes that the ALJ did not err in finding that Plaintiff was not denied an opportunity to respond to the charges, and that even assuming such error occurred, it was not harmful.

Although the Court provided a detailed factual timeline earlier, a brief overview of the relevant facts and timeline is helpful:

- Plaintiff returned to Hawai`i on April 6, 2016. ALJ Decision at 5.

- In June 2016, Mr. Weaver prepared a draft NOPR, which led to the investigation of Plaintiff.  Id. at 7.

- On October 13, 2016, in connection with that investigation, Plaintiff was detained, fingerprinted, photographed, told he was a suspect for wire fraud and False Claims Act violations, and then released on his own recognizance.  It was in connection with this October incident and the associated investigation that Plaintiff invoked his Fifth Amendment right to remain silent and to counsel.  Id. at 7-8.

- On January 9, 2017, the NOPR was issued to Plaintiff.  Id.; see also AR 15-22.

- Plaintiff replied in writing through his attorney.  The response did not substantively respond to the NOPR, but instead stated that Plaintiff continued to invoke the Fifth Amendment because he had not received immunity or adequate protection for any statements he might make.  AR 32-33.

- Three days later, the Army sent Plaintiff the February 16, 2017 letter notifying him that his "chain of command was informed that the previous military police inquiry . . . is now closed and there will be no further criminal inquiry into that matter," and that Plaintiff should submit a reply to the NOPR by 5:00 p.m. EST on February 27.  AR 31.

- Plaintiff's counsel responded (hours after the extended deadline had passed) that Plaintiff would continue to

64

assert his Fifth Amendment privilege and "refuse to respond to the proposed removal" until he received formal confirmation from a "Federal prosecutorial entity confirming that prosecution has been officially declined, or the issuance of an immunity from prosecution notice."  AR 28-29

• The Deciding Official issued the Notice of Removal on April 5, 2017, without having received any written reply from Plaintiff.

• After Plaintiff's removal and while his appeal before the MSPB was pending, a legal representative for the Army sent Plaintiff a second letter again confirming that the Army had "decided not to criminally prosecute" him and that "any statement that [Plaintiff] may make as part of the ongoing MSPB case or otherwise will not be used against him in a criminal proceeding."  AR 234.

• Plaintiff filed a written response thereafter, in connection with his MSPB Appeal.

Plaintiff's argument that he effectively had no opportunity to meaningfully respond misapplies the relevant framework.[30]  It is true that an employee may assert the Fifth Amendment privilege in an administrative investigation to protect against disclosing information the employee "reasonably

_____

[30]  Remarkably, Plaintiff's Opening Brief cites no cases to support his due process argument.  See Opening Br. at 18-20.

believes could be used in his own criminal prosecution."
Kastigar v. United States, 406 U.S. 441, 444-45, 92 S. Ct. 1653,
32 L. Ed. 2d 212 (1972).  But that rule is "not as wide
sweeping" as Plaintiff would have the Court believe.[31/]  DeWalt
v. Barger, 490 F. Supp. 1262, 1271-72 (M.D. Pa. 1980); see also
Brewer, 249 F. App'x at 176 ("When answering an agency's
question, an employee may invoke his Fifth Amendment right to
remain silent.  However, an agency may still take into
consideration and make an adverse inference from the failure of
the employee to respond." (citing LaChance v. Erickson, 522 U.S.
262, 267-68, 118 S. Ct. 753, 139 L. Ed. 2d 695 (1998))).

Garrity, a 1968 Supreme Court case, held that the
Fourteenth Amendment "prohibits use in subsequent criminal
proceedings of statements obtained under threat of removal from
office."  Garrity v. State of N.J., 385 U.S. 493, 500, 87 S. Ct.
616, 620, 17 L. Ed. 2d 562 (1967); see also Modrowski, 252 F.3d
at 1350-51 (explaining that "an employee receives 'use immunity'
through the so-called Garrity exclusion").  So it is now settled
that "a later prosecution cannot constitutionally use statements

---

[31/]  Indeed, an employee may even face discipline on a specific charge
for failing to cooperate with an agency investigation.  E.g., Modrowski, 252
F.3d at 1350 (explaining that an employee "may be removed for failure to
cooperate with an agency investigation"); see also, e.g., Brewer, 249 F.
App'x at 176 & n.1 (sustaining a charge for "failure to cooperate" because
the employee "chose to remain silent and face dismissal").  This is not what
happened here; the Army did not assert "failure to cooperate" as one of the
charges to sustain Plaintiff's removal (but it shows that employees cannot
plead the fifth indefinitely to delay the removal process).

(or their fruits) coerced from the employee-in an earlier disciplinary investigation or proceeding-by a threat of removal from office if he fails to answer the question." Kalkines v. United States, 473 F.2d 1391, 1392-93 (Fed. Cir. 1973). "Invocation of the Garrity rule for compelling answers to pertinent questions about the performance of an employee's duties is adequately accomplished when that employee is duly advised of his options to answer under any immunity actually granted or remain silent and face dismissal." Weston v. Dep't of Housing & Urban Dev., 714 F.2d 943, 948 (Fed. Cir. 1983).

        Here, Plaintiff was notified by the Army's February 16 letter that the military police inquiry had been "closed" and there would be "no further criminal inquiry" into the matter. AR 31.  Plaintiff has not offered any persuasive explanation or authority for why that language was inadequate, especially when Plaintiff's counsel presumably would have been aware of the Garrity principle.  At most, "[P]laintiff here was faced with either testifying, which testimony could not later be used in criminal prosecution against him under Garrity . . ., or refus[ing] to testify and fac[ing] the consequences of suspension or dismissal." DeWalt, 490 F. Supp. at 1271-72; see also Weston, 714 F.2d at 948.  That choice did not compel Plaintiff to waive his Fifth Amendment immunity or deprive him of his due process rights to respond to the NOPR.  Id.

Modrowski provides a useful comparison to the facts here—especially for assessing the adequacy of an agency's immunity assurance—but it does not compel reversal in this case. The employee in Modrowski had been the subject of a criminal inquiry, but the agency sent the employee a letter advising that the U.S. Attorney had granted him immunity and declined to prosecute him. 252 F.3d at 1347-51. The employee was unsure about the scope of immunity and whether the letter provided him adequate protection, so he sought a delay in the removal proceedings to allow time to speak with his attorney, who was traveling. Id. at 1348. The agency refused without explanation and issued the notice of removal based in part on a charge of "failure to cooperate" for the employee's refusal to respond to the charges, which the MSPB sustained on appeal. Id. at 1350-51. The Federal Circuit reversed, finding "considerable ambiguity" in the letter such that the employee understandably had questions about the scope of immunity and would want advice of counsel. Id. at 1351 ("Even if such a letter is a suitable means of conveying immunity, it is entirely understandable that Modrowski would suspect the validity and scope . . . . ").

Turning back to this case, the Court notes again that Plaintiff has not offered any reason why the February 17 letter was inadequate or ambiguous. The ALJ found that the letter was not ambiguous and that it provided sufficient assurance to allow

68

Plaintiff to freely respond without concern of criminal investigation or prosecution.  The Court finds that the ALJ's decision was not arbitrary or capricious, and that this case is distinguishable from Modrowski.

Unlike the employee in Modrowski, Plaintiff was not charged with failing to cooperate based on his invocation of the Fifth Amendment.  Plaintiff simply chose not to respond despite the assurances he received from the Agency that the criminal investigation had been dropped.  See Colon, 58 M.S.P.R. at 201-02 ("The appellant was not denied an opportunity to reply; she merely failed to exercise her right to do so.").  Beyond that, unlike the plaintiff in Modrowski, Plaintiff here had time to—and indeed did—confer with his counsel, and then to provide a response to the NOPR.  See Modrowski, 252 F.3d at 1352-54 (emphasizing the fact that, unlike the employees in other cases where the removal was sustained, the employee in this case "was denied an adequate opportunity to consult with his lawyer").  That Plaintiff chose to rely on his attorney's conservative legal advice to continue to plead the Fifth does not convince the Court that the Army's decision to proceed with the removal

process thereafter constituted harmful procedural error.[32/]  Cf.
Weston, 714 F.2d at 948 (affirming MSPB decision finding that
the agency did not abuse its discretion when it imposed a
penalty for actions undertaken by the employee in good faith
reliance upon erroneous advice of her attorney).

Moreover, from a purely procedural point, it is also
worth noting that the Federal Circuit in Modrowski did not
reverse and remand the entire proceeding for harmful procedural
error; it instead only reversed the "failure to cooperate"
charge, affirming the other charge and remanding for a
determination of the appropriate penalty.

Finally, perhaps most significant here, in addition to
the Garrity exception, and as the Court already noted above,
Plaintiff received unambiguous notice from the Army that the
criminal inquiry and investigation had been closed and the Army
would not be pursuing criminal charges.[33/]  Plaintiff's desire
for a more explicit statement of immunity from a prosecuting

_____

[32/]  The Court notes the additional fact that, even if the letter from
Plaintiff's counsel substantively responded to the NOPR (instead of just
declining to respond), the response would have been untimely.  Cf. Alford v.
Dep't of Def., 118 M.S.P.R. 556, 560 (M.S.P.B. 2012) (reversing agency where
it went forward with the removal even though the employee had timely
requested additional time to respond).
[33/]  The Court notes that Plaintiff received two letters regarding the
status of the criminal inquiry—one before the removal and one after, while
Plaintiff's appeal to the MSPB was pending.  Each of those letters were sent
on behalf of the Army; yet while Plaintiff found the first notice to be
inadequate assurance, he apparently was comfortable with the second (given
that he then filed a written response in his MSPB appeal), even though both
were from the Army and not from a federal prosecuting entity.

70

entity was unwarranted, especially when no prosecuting entity was ever involved to begin with.  Plaintiff's counsel admitted at the hearing that the Army had never even told Plaintiff that any allegations were referred a U.S. Attorney in the first place.  It follows that Plaintiff would not be entitled to a letter on behalf of the U.S. Attorney confirming that charges would not be pursued.

   "Courts need to balance the rights of all litigants, endeavoring to avoid unnecessarily burdening parties whose Fifth Amendment rights have been implicated, while protecting the interests of their adversaries." S.E.C. v. Arias, No. CV 12-2937 (ADS)(GRB), 2012 WL 4849151, at *4 (E.D.N.Y. Sept. 14, 2012), report and recommendation adopted by 2012 WL 4849346 (E.D.N.Y. Oct. 11, 2012).  Plaintiff here has failed to convince the Court that the ALJ's conclusion that Plaintiff's due process rights were not violated was arbitrary, capricious, or contrary to law.

   Even assuming Plaintiff had established some procedural error, he fails to show how his response would have

altered the Deciding Official's decision.[34/]  Cf. Brewer, 249 F.

App'x at 177.  Indeed, the ALJ in his Decision conducted a

detailed analysis of Plaintiff's responses and evidence

submitted after his removal, including an explanation of how

they would not have changed the outcome.  The Deciding Official

also reviewed Plaintiff's response and testified as to his

---

[34/]  The ALJ and the Army both cite MSPB decision Hodges v. U.S. Postal Serv., 118 M.S.P.R. 591 (M.S.P.B. 2012), for the proposition that an agency's failure to allow or consider an appellant's oral and/or written reply to an NOPR prior to removal constitutes—in itself—a reversible due process violation.  In Hodges, the MSPB did not undertake any "harmful error" analysis. 118 M.S.P.R. at 594.  Instead, it found the deciding official's "complete failure" to review or consider the plaintiff's written response enough to warrant reversal.  Id.  Although Hodges may stand for the general principle that the employee's right to respond to the charges against him is of utmost importance under the Due Process Clause, the Court finds Hodges distinguishable from this case.  Hodges involved straightforward facts:  The employee timely submitted his written reply, and the deciding official—for unspecified reasons—simply never considered it.  See id. at 592-93.  Here, Plaintiff's argument that he lacked the opportunity to reply is based on his argument that he had a competing interest in avoiding self-incrimination. The bottom line here is that Plaintiff chose to not reply.  Indeed, even his letter seeking further assurances about the scope of the investigation was untimely in responding to the extension given in the Army's February 16 letter.
    The Court briefly notes as well that the other cases the ALJ cites are helpful in some ways but distinguishable in others.  The Court already discussed Modrowski above.  Alford involved somewhat similar facts to Hodges; the employee timely submitted a request to provide a supplemental response but the agency moved ahead with the removal decision before receiving it, so the Board reversed.  118 M.S.P.R. at 559-60.  In Colon, on the other hand, the Board found that there was no harmful error when the plaintiff declined to reply on Fifth Amendment grounds.  See Colon, 58 M.S.P.R. at 201-02 ("The appellant was not denied an opportunity to reply; she merely failed to exercise her right to do so.").  The ALJ also cited Gunville, an unpublished MSPB slip opinion, in which the Board rejected a Fifth Amendment claim similar to the one Plaintiff makes here because the criminal case against the employee had been dismissed without prejudice.  slip op. at ¶¶ 4-5, 1-15.  As the ALJ framed it, the Board held in Gunville that "the dismissal without prejudice vitiated [the plaintiff's] concerns" and rendered his Fifth Amendment defense without merit.  The final case cited by the ALJ, Loudermill, stands for the general due process rule that a tenured federal employee is entitled to written notice of the charges against him and an opportunity to respond.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).

impression, which was that he would not have come down differently.

Courts "should reverse agency actions for procedural error 'only if the procedures followed substantially impaired the rights of the employees.'"  Brewer, 647 F.2d at 1097 (citation omitted); see also Adams v. Dep't of Transp., 735 F.2d 488, 496 (Fed. Cir. 1984) (Nies, J. concurring) (rejecting a "per se rule" that a procedural error requires reversal and explaining that the harmful error requirement asks whether "the wrongful procedure harmed the employee in the presentation of his defense so that a different result might have been reached?").

Here, Plaintiff participated in a full hearing before the ALJ and was given the opportunity to file responses, cross-examine the complaining witnesses, and craft arguments.  The Court notes that the Deciding Official testified after reading plaintiff's response before the MSPB that his removal decision would have been no different.  ALJ Decision at 48.  The ALJ's decision below is thorough, and considered in detail Plaintiff's procedural argument.  Like the ALJ, the Court finds no procedural error that substantially impaired Plaintiff's rights such that reversal would be required.  See Doyle v. Veterans Admin., 667 F.2d 70, 72-73 (Fed. Cl. 1981).

It is Plaintiff's burden to prove harmful procedural error, and without more, the Court finds that the ALJ's decision that Plaintiff failed to meet that burden relied on substantial evidence and was not made arbitrarily, capriciously, or in a manner contrary to law.  Thus, the Court must affirm the MSPB's determination that there was no denial of due process and, if there was, the error was harmless.  The MSPB's findings on these issues shall not be disturbed and Plaintiff's request that the matter be reversed or remanded on this issue is denied.

### ii.  Retaliation

One of Plaintiff's arguments in his Opening Brief is that the Army terminated his employment because he engaged in protected EEO activity.  Opening Br. at 36-38.  This argument goes to Plaintiff's discrimination-based claims and is thus not subject to the arbitrary-and-capricious standard.  In any event, the Court addressed those claims above in its earlier de novo review.

### CONCLUSION

For the reasons discussed above, the Court GRANTS the Army's Motion to Dismiss or in the Alternative for Summary Judgment, ECF No. 29, on Plaintiff's Title VII discrimination and retaliation claims and AFFIRMS the Agency decision of the MSPB regarding Plaintiff's removal from federal employment.

74

The Title VII discrimination and retaliation claims are dismissed without prejudice.  The Court grants Plaintiff leave to amend within 30 days of the date of this Order. Plaintiff is forewarned that he is granted leave to amend only to replead his Title VII claims.  He cannot assert a new cause of action.  Any amendment must address the deficiencies identified in this Order.  For example, for alleged misconduct for which he seeks relief, Plaintiff must show that he properly exhausted his administrative remedies.  And Plaintiff must plead facts to support the elements of his asserted causes of action and theories of liability.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, February 2, 2021.



Alan C. Kay
Sr. United States District Judge

Richards v. Whitley, Civ. No. 19-00624 ACK-RT, Order Granting the Army's Motion to Dismiss (ECF No. 29) and Affirming the Agency's Decision Upheld by the Merit Systems Protection Board.